UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **COMPLAINT** |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 13-10783 |
| STEVEN SHERMAN, | ) | |
| Defendant. | ) | |

The United States brings this action under the False Claims Act and the common law theories of fraud, unjust enrichment, and/or payment by mistake, to recover funds improperly paid to defendant Steven Sherman by the United States Air Force ("Air Force") as a result of the submission of false or fraudulent time cards and supporting documentation. The United States seeks damages and penalties for these fraudulent actions.

**Jurisdiction and Venue**

1. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1345, 1367(a), and under 31 U.S.C. § 3732. Jurisdiction is proper under 31 U.S.C. § 3732(a) because the fraudulent time cards were submitted in this District. Venue is proper in this District under 31 U.S.C. § 3732 and 28 U.S.C. § 1391(b) and (c).

**The Parties**

2. Plaintiff the United States of America is a sovereign and body politic and brings this action on behalf of the Department of Defense, a cabinet-level agency of the Executive

1

Branch, which includes the Air Force. The Air Force operates Hanscom Air Force Base in Bedford, Massachusetts.

3. Defendant Steven Sherman is a resident of Pennsylvania. In January 2011, Steven Sherman was employed by the Air Force in the Communications and Information career field as a civilian Information Technology Specialist at Hanscom Air Force Base in Massachusetts. Sherman deployed voluntarily on January 4, 2011, to Djibouti, Africa to work for one year as a member of the Civilian Expeditionary Workforce.

## **The False Claims Act**

4. The False Claims Act provides, in pertinent part, that any person who:

> (a)(1)(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;
>
> (a)(1)(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; . . .
>
> is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, . . . plus 3 times the amount of damages which the Government sustains because of the act of that person . . . .

31 U.S.C. § 3729. For purposes of the False Claims Act,

> the terms "knowing" and "knowingly" mean that a person, with respect to information (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information,
>
> and no proof of specific intent to defraud is required.

31 .S.C. § 3729(b) (1986).

5. Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, as amended by the Debt Collection Improvement Act of 1996, 28 U.S.C. § 2461 (notes), and 64

Fed. Reg. 47099, 47103 (1999), the False Claims Act civil penalties were adjusted to $5,500 to $11,000 for violations occurring on or after September 29, 1999.

### Sherman's Use of Two Separate Time Cards to Report False and Fraudulent Overtime Hours

6.  In January 2011, Sherman worked as a GS-12 civilian employee and Information Technology Specialist at Hanscom Air Force Base, Massachusetts.

7.  On January 4, 2011, Sherman voluntarily deployed for one year to Djibouti, Africa as part of the Civilian Expeditionary Workforce under Colonel Patricia McGinnis.

8.  After arriving in Djibouti on January 8, 2011, Sherman was assigned by Colonel McGinnis to work under the Information Assurance Manager and repair computer networks.

9.  While in Djibouti, Sherman was required to submit a time card every two weeks to both Captain Matthew Sullivan in Djibouti and Anne Meffan at Hanscom, Sherman's permanent station. According to procedure, Captain Sullivan would review the time cards for accuracy and Meffan would submit the time cards for actual payment.

10.  While deployed in Djibouti—between January 29, 2011, and April 23, 2011—Sherman was to email unsigned but initialed time cards every two weeks to Captain Sullivan in Djibouti and Meffan at Hanscom. Meffan would submit these time cards for approval and process them for payment in the Defense Civilian Pay System.

11.  In actuality, it was Sherman's practice to make two separate timecards for each submission. Instead of sending the same time card to both Captain Sullivan and Meffan, Sherman created both a false one, showing that he worked a large number of overtime hours and had few to no absences, and an accurate one reflecting the much smaller number of hours he actually worked, the sick leave he actually took, and his consistent unauthorized absences.

12. To disguise this falsification of his time cards, Sherman purported to email the falsified time cards to both Captain Sullivan and Meffan, but would intentionally input an invalid email address for Captain Sullivan, ensuring that only Meffan would receive the falsified time cards. Sherman separately emailed Captain Sullivan only the accurate versions of his time cards so that Captain Sullivan, who was familiar with his actual attendance record, would not be aware of the inconsistencies.

13. Each of the falsified time cards was received in Massachusetts by Meffan, who would actually submit the time cards for processing of payment to Sherman.

14. These false submissions included, but were not limited to, the following:

a. For the pay period ending April 9, 2011, Sherman submitted an accurate time card to Captain Sullivan reflecting thirty-six hours of overtime and eleven hours of sick leave. In the falsified time card sent to Meffan, Sherman listed fifty-seven hours of unscheduled overtime and zero hours of sick leave. As a result of this submission, Sherman was paid $1,313.92 to which he was not entitled.

b. For the pay period ending April 23, 2011, Sherman submitted an accurate time card to Captain Sullivan reflecting five hours of overtime pay. In the falsified time card submitted to Meffan, Sherman listed sixty-four hours of unscheduled overtime. As a result of this submission, Sherman was paid $2,217.24 to which he was not entitled.

c. Sherman's time cards for the pay periods ending February 25, 2011, March 11, 2011, March 25, 2011, and May 7, 2011, were also falsified in the manner described above. As a result of these submissions, Sherman was paid $1,416.57 to which he was not entitled.

15. As a result of the falsified time cards and documentation submitted by Sherman, he was paid funds by the Air Force for work that he did not perform.

16. Each of Sherman's falsified time card submissions contained material misstatements, omissions, or inaccuracies, which were relied upon by the United States and caused the payment of funds to which he was not entitled.

17. The United States was entitled to rely, and did in fact rely to its detriment, on the accuracy and truthfulness of the time cards submitted by Sherman.

18. Sherman requested redeployment back to Massachusetts on April 20, 2011, eight months early. On April 29, 2011, Sherman returned to the United States.

19. During May through July 2011 Sherman, who was already working a compressed schedule at Hanscom, took off seventy hours of comp time, sixty-six hours of annual leave, twenty-eight point five hours of sick leave, and seven hours of awarded time. Sherman was absent for more than twenty-five business days within a two-month period and failed to complete any tasks assigned by his supervisor.

20. On September 8, 2011, the Air Force proposed an adverse personnel action—suspending Sherman for a period of 5 days—while they began an investigation into his unauthorized work absences.

21. Sherman did not respond to the formal charges and instead, on September 26, 2011, resigned from the Air Force.

22. On February 10, 2012, the Air Force sent Sherman a Notice of Proposed Debarment and a Memorandum in Support of the Proposed Debarment. The Notice of Proposed Debarment informed Sherman that he could submit information and arguments opposing the administrative action and that he would be receiving a copy of the administrative record. Sherman did not respond.

23. On March 23, 2012, to protect the interest of the Government, the Air Force debarred Sherman, effective February 10, 2012, from federal Government contracting and from directly or indirectly receiving the benefits of federal assistance programs.

## COUNT I
### (False Claims Act, 31 U.S.C. § 3729(a)(1) (2008))

24. Plaintiff United States repeats and realleges each allegation in each of the preceding paragraphs 1 through 21 as if fully set forth herein.

25. Defendant knowingly presented or caused to be presented false or fraudulent claims for payment or approval by the United States, including but not limited to each of the fraudulent time card submissions referenced herein.

26. By virtue of the false or fraudulent claims made by Defendant, the United States suffered damages and therefore is entitled to multiple damages under the False Claims Act, in an amount to be determined at trial, plus a penalty of $5,000 to $11,000 for each violation.

## COUNT II
### (False Claims Act, 31 U.S.C. § 3729(a)(1)(B) (1986))

27. Plaintiff United States repeats and realleges each allegation in each of the preceding paragraphs 1 through 21 as if fully set forth herein.

28. Defendant knowingly made, used, or caused to be made or used, false records or statements material to false or fraudulent claims for payment or approval by the United States, including but not limited to each of the fraudulent time card submissions referenced herein.

29. By virtue of the false records or statements made by Defendant, the United States suffered damages and therefore is entitled to multiple damages under the False Claims Act, in an amount to be determined at trial, plus a penalty of $5,000 to $11,000 for each violation.

## COUNT III
### (Common Law Fraud)

30. Plaintiff United States repeats and realleges each allegation in each of the preceding paragraphs 1 through 21 as if fully set forth herein.

31. This is a civil action brought by the United States to, inter alia, recover against Defendant under the common law for fraud.

32. Defendant made misrepresentations of material fact, with knowledge of their falsity and/or with reckless disregard for their truth, and with the intent that they be relied on by the United States, to induce the United States to pay Defendant for overtime, leave time, and or work time to which he was not entitled.

33. The United States had a right to rely upon these representations. Acting without knowledge of the falsity of these representations, and in reliance upon them, the United States paid Defendant for overtime, leave time, and or work time to which he was not entitled.

## COUNT IV
### (Unjust Enrichment)

34. Plaintiff United States repeats and realleges each allegation in each of the preceding paragraphs 1 through 21 as if fully set forth herein.

35. Defendant obtained payments from the United States for overtime, leave, and/or work hours that he did not perform. As a result of these payments, Defendant has been unjustly enriched at the expense of the United States, under circumstances dictating that in equity and good conscience, the money, in an amount to be determined at trial, be returned.

WHEREFORE, plaintiff United States of America demands judgment against Defendant as follows:

A. Counts I and II under the False Claims Act, for treble its damages, and for the number of civil penalties allowed by law, in an amount as the Court may determine, between $5,000 and $11,000 for each violation;

B. Counts III and IV under the Common Law, – an amount equivalent to the loss sustained by the United States, together with punitive damages, costs, and interest; and

C. Such other and further relief as the Court may deem just and proper.

Count IV – an amount equivalent to the loss sustained by the Air Force, plus prejudgment interest.


Dated:  April 4, 2013                    Respectfully submitted,

                                         CARMEN M. ORTIZ
                                         United States Attorney

                                   By:   */s/   Marissa L.P. Caylor*
                                         Marissa L.P. Caylor
                                         Special Assistant United States Attorney
                                         United States Attorney's Office
                                         John J. Moakley United States Courthouse
                                         1 Courthouse Way, Suite 9200
                                         Boston, MA 02210
                                         (617) 748-3338